**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

MARGARET F.,[1]

        **Plaintiff,**

    v.                            **Civil Action 2:25-cv-651**
                                     **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

## OPINION AND ORDER

       Plaintiff, Margaret F. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and social security disability insurance benefits ("DIB"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), and the administrative record (ECF No. 7). For the reasons that follow, the Commissioner's non-disability determination is **REVERSED**, and this matter is **REMANDED** to the Commissioner and the ALJ pursuant to Sentence Four of § 405(g).

### I.     BACKGROUND

       Plaintiff filed her DIB application in September 2022, alleging that she became disabled beginning on November 26, 2021. After Plaintiff's application was denied initially and upon

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on April 9, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. A vocational expert ("VE") also appeared and testified. On April 25, 2024, the ALJ issued an unfavorable determination, which became final on April 17, 2025, when the Appeals Council denied Plaintiff's request for review. (R. at 14–43, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ's residual functional capacity ("RFC") determination lacks substantial support because the ALJ erred when evaluating medical opinion evidence and when considering her memory loss. (Pl.'s Statement of Errors 10–15, 15–18, ECF No. 8.) The Court finds that the latter contention has merit.

## II.     THE ALJ'S DECISION

The ALJ issued the unfavorable determination on April 25, 2024. (R. at 14–43.) The ALJ initially determined that Plaintiff met the insured status requirements through December 31,

2026. (*Id*. at 19.) At step one of the sequential evaluation process,[2] the ALJ found that although Plaintiff had engaged in substantial gainful activity during the first three quarters of 2022, she had not engaged in such activity after that. (*Id*. at 19–20.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: hemorrhagic stroke/cerebrovascular accident with residuals; atrial fibrillation; degenerative disc and joint disease of the cervical and lumbar spines; and obesity. (*Id*. at 20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 24.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

3

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant should avoid climbing ladders, ropes, and scaffolds. She could frequently balance, stoop, kneel, crouch, and crawl. The claimant could frequently climb ramps and stairs. The claimant should avoid all exposure to hazards.

(*Id*. at 25.) At step four, the ALJ relied on the VE's testimony to determine that Plaintiff could not perform her past relevant work. (*Id*. at 37.) Relying again on the VE's testimony at step five, the ALJ determined that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of cashier, merchandise marker, and routing clerk. (*Id*. at 38.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of*

*Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.  ANALYSIS

As previously explained, Plaintiff contends that the ALJ reversibly erred when evaluating medical opinion evidence and by failing to adequately consider and account for her memory issues. (Pl.'s Statement of Errors 10–15, 15–18, ECF No. 8.) The Court considers these contentions in turn and concludes that only one has merit.

### A.  Medical Opinion Evidence

Plaintiff first challenges the ALJ's evaluation of medical opinions from Drs. Ligas and Romero. (*Id*. at 12–15.) The Court is not persuaded.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical

---

[4] Because Plaintiff's applications were filed in 2021, they are subject to regulations governing applications filed after March 27, 2017.

5

findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions  . . . will be." 20 C.F.R. § 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. § 416.920c(c)(2).

### 1.    Treating Provider, Dr. Ligas

On June 20, 2023, Dr. Ligas completed a two-page medical source statement. (R. at 799–800.) The ALJ discussed the completed form as follows:

> The undersigned has read and considered the opinion of Dr. Ligas, M.D., evidenced within Exhibit 9F from June 2023. Dr. Ligas noted the claimant evidenced exertional limitations on standing/walking/lifting/carrying. The undersigned has not adopted these limitations verbatim, because the provider considered chronic foot issues as the basis for reduction in standing/walking and as noted above the objective evidence supported no specific impairment to either foot via objective imaging or diagnostic testing. Further, while the physician noted the claimant could not engage in the heavy lifting of her past job as the basis for the limits in

lifting/carrying, the objective treatment records did not support significant reduction in the activity, noting she maintained overall strength at 4/5 with 5/5 as normal, showed normal range of motion, had a normal gait, and exhibited no specific upper extremity impairment. While she reported at tremor, the tremor was found to be related to her anxiety and controlled with the prescribed Klonopin medication. The undersigned has not adopted the postural limits verbatim, but finds such limitations are generally consistent with her body habitus, history of atrial fibrillation requiring medication management, spinal degeneration, as well as intermittent reports of dizziness. The undersigned has not adopted the manipulative limits verbatim, noting the claimant exhibited no more than slight reduction in grip strength at 4/5 during her consultative examination with 5/5 as normal and showed no deficits in range of motion in any of her joints. The undersigned notes the claimant reported some tremor; however, it was based upon her mental impairment of anxiety, which was controlled with prescribed medications. The undersigned notes the claimant did not routinely report exacerbation of her symptomology when reaching or lifting to treatment providers. The undersigned has not adopted the environmental limits verbatim, noting that she did not evidence respiratory diagnosis or report symptoms were exacerbated by pulmonary irritants/atmospheric conditions. She was not routinely treated for headaches affected by noise, rather she was treated for isolated headache in connection with her stroke and with a subsequent acute viral illness. However, the undersigned notes limits on hazards were not inconsistent with her reported intermittent atrial fibrillation requiring medications, stroke residual of intermittent dizziness, and her body habitus. It should be noted this opinion was also not entirely consistent with Dr. Ligas' own treatment notes within Exhibit 10F from the same time. In fact, the physician specifically noted that the claimant did okay physically and cited that she really could do more than she was doing in terms of physical activity (Exhibit 10F/9-11). For these reasons, the undersigned finds the opinion no more than collectively partially persuasive.

(*Id*. at 35.)

As this discussion demonstrates, the ALJ considered the consistency factor and found it lacking. Dr. Ligas opined that Plaintiff could stand or walk without interruption for thirty minutes for a total of two to three hours in an eight-hour workday due to her chronic foot issues. (*Id*. at 35, 799.) The ALJ declined to adopt that limitation because the record did not contain any objective evidence of foot impairments. (*Id*. at 35.) Substantial evidence supports that explanation. As the ALJ explained, the record does not contain imaging or other diagnostic tests demonstrating that Plaintiff had foot impairments.

Moreover, in November 2021, Plaintiff suffered a hemorrhagic stroke. (*Id*. at 397.) Although Plaintiff had decreased step length and cadence during an initial post-stroke examination, when she was discharged in December 2021, she moved her extremities well and had less weakness on her right side. (*Id*. at 417, 720.) During a January 2023 consultative examination, Plaintiff had 4/5 strength scores in her ankles and feet, normal gait without a device, and normal ranges of motion in her ankles. (*Id*. at 755–59.) She was also noted as "not a risk for falling." (*Id*. at 753.) And even though Plaintiff was encouraged to see a podiatrist when she reported foot pain in January 2024, she did not do so. (*Id*. at 809.)

The ALJ further determined that the lifting limits opined by Dr. Ligas were also inconsistent with the record. Dr. Ligas opined that Plaintiff could occasionally lift ten pounds and frequently lift five pounds because her previous job required heavy lifting and she had trouble doing that work. (*Id*. at 35, 799.) But the ALJ accurately explained that Plaintiff had normal ranges of motion and 4/5 strength scores in multiple areas including the cervical and thoraco-lumbar spine, shoulders, elbows, wrists, and hands. (*Id*. at 35, 755–59.) The ALJ also accurately explained that the record lacked evidence of any upper extremity impairments. (*Id*. at 35.) In addition, the ALJ accurately explained that although Plaintiff reported hand tremors or shaking, treatment notes indicated that those anxiety-related symptoms were controlled by medication. (*Id*. at 35, 55–56, 386, 771.)

The ALJ also modified the postural limits opined by Dr. Ligas because they were inconsistent with the record. (*Id*. at 35.) Dr. Ligas opined that Plaintiff could never climb or crouch, and could only rarely balance, stoop, kneel, or crawl due to dizziness and heart rate issues. (*Id*. at 799.) The ALJ instead determined that Plaintiff could frequently perform these

activities based on evidence about her atrial fibrillation, spinal degeneration, and dizziness. (*Id*. at 35.)

Substantial evidence supports that determination. When discussing those three conditions elsewhere in the determination, the ALJ explained that they were well controlled, generally mild, or intermittent. For instance, the ALJ accurately explained that even though Plaintiff had a diagnosis of atrial fibrillation, her heart rate was well controlled with metoprolol (Lopressor), she did not pursue cardiology follow-up after expressing concern about her heart rate, and her provider indicated that she could be more active. (*Id*. at 28, 534, 812, 809.) The ALJ also accurately explained that imaging showed degenerative disc and joint disease in Plaintiff's cervical and lumbar spine, but Plaintiff nevertheless had normal ranges of motion, 4/5 scores on strength tests, intact sensation, and normal gait. (*Id*. at 27–28, 755, 757, 753, 759.) Additionally, the ALJ accurately explained that despite reporting dizziness, Plaintiff was not referred for vestibular testing or prescribed vestibular medications and she did not experience dizziness during movement testing at her consultative examination. (*Id*. at 31, 753.)

The ALJ further determined that the manipulative limits opined by Dr. Ligas were inconsistent with the record. Dr. Ligas opined that Plaintiff could rarely reach, occasionally push or pull, and frequently perform fine and gross manipulations. (*Id*. at 800.) The ALJ explained, however, that Plaintiff had only a slight reduction in grip strength during her consultative examination, normal ranges of motion in her arms and hands, and she did not regularly report that reaching aggravated her symptoms. (*Id*. at 35.) Substantial evidence supports this explanation because it accurately reflects the record evidence. (*Id*. at 756, 759, 757–58.)

Finally, the ALJ considered the supportability factor and explained that the opinion was unsupported by Dr. Ligas' own treatment notes. (*Id*. at 35.) Substantial evidence supports that

determination as well. In a June 20, 2023 treatment note, Dr. Ligas wrote that even though things may have changed since her stroke, Plaintiff could do more than she was doing, and he encouraged her to move around a little bit more. (*Id*. at 811–12.)

Plaintiff does not challenge the ALJ's record-based explanations for her consistency and supportability determinations. Instead, she contends that the ALJ "cherry picked" the evidence. (Pl.'s Statement of Errors 13, ECF No. 8.) In support, she cites portions of Dr. Ligas' treatment notes documenting Plaintiff's subjective complaints and her responses during a review of systems. (*Id*. (citing R. at 810–11).) Plaintiff does not, however, cite conflicting objective evidence. But even if she did, an allegation of "cherry picking" is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence."). And the Court is not convinced of cherry picking here. The ALJ accurately described record evidence that supported her consistency and supportability analyses.

In short, the ALJ properly considered the consistency and supportability factors when evaluating Dr. Ligas' medical opinion and provided record-based reasons for determining that it was only partly persuasive. Plaintiff's contrary contention lacks merit.

### 2. Consultative Examiner, Dr. Romero

Dr. Romero consultatively examined Plaintiff on January 13, 2023. (*Id*. at 751–59.) The ALJ discussed Dr. Romero's opinion as follows:

> The undersigned has read and considered the opinion of Dr. Romero, consultative examiner, evidenced within Exhibit 5F). The examiner noted the claimant's difficulties in combination with her middle-aged status were so that she would not be able to work in any capacity. The undersigned finds this portion of the opinion

10

unpersuasive. The undersigned notes that such statement is inherently inconsistent with the examination findings showing other than some generalized reduced strength at 4/5 in the areas of the body, the claimant exhibited normal findings. The undersigned notes that statements such as this regarding disability/employability are statements not opinions and reserved for the Commissioner. In accordance with 20 CFR 404.1520(b)(c) such statements are inherently neither valuable nor persuasive. Additionally, the examiner opined the claimant would have exertional limits being capable of sitting for 45 minutes to an hour; could stand for 30 minutes; could walk for 15 minutes and lift/carry 10 pounds; could not climb or crawl, was unsure whether she could crouch; could not knee; and would have issue with balance. The undersigned has not adopted these limits verbatim. First, the undersigned has not adopted the limits because they were based largely upon the claimant's subjective reports during the assessment. Second, the examiner included reports of pain in her hip and feet, despite any objective evidence (as noted/discussed above) of any objective hip or feet impairments. The examiner also considered statements regarding her memory, which were outside of the scope of the physical assessment and his scope of expertise, noting he was not a mental health professional or neurological professional certified to assess mental health or cognitive functioning. The undersigned finds the limitations were not internally consistent with the examination findings showing no more than slight reduced strength at 4/5, intact range of motion in the areas tested, intact gait, and negative straight leg testing. While the opinion appears to overstate the claimant's functional limits, the undersigned does find the opinion the claimant would experience exertional and postural limits at least partially persuasive, in that such limits are not consistent with her medical evidence of record from routine providers showing recurrent need for medication for atrial fibrillation, presence of degenerative disc and joint disease in the spine, obese body habitus, and her history of stroke requiring some recurrent follow up. The undersigned notes however, the claimant's reported stroke residuals such as dizziness and body habitus would further support environmental limits which were not discussed by the examiner. For these reasons, the undersigned finds the opinion of the examiner no more than partially persuasive.

(*Id*. at 33–34.)

As this discussion demonstrates, the ALJ considered the consistency factor and found it lacking. The ALJ explained that Dr. Romero noted that Plaintiff's limitations were based, in part, on Plaintiff's reports of pain in her hip and feet but the record lacked evidence of a hip or foot impairment. (*Id*. at 34.) Substantial evidence supports that explanation—the record does not contain such evidence.

The ALJ also considered the supportability factor and found it lacking. The ALJ explained that Dr. Romero's limits were not internally consistent with (*i.e.*, not supported by) Dr. Romero's own examination findings. (*Id.* at 34.) Substantial evidence supports that explanation. As the ALJ noted, Dr. Romero opined that Plaintiff's limits, including that she could only stand or walk for fifteen minutes and lift or carry ten pounds, were disabling. (*Id.* at 753.) But as the ALJ also accurately noted, Dr. Romero's examination found that Plaintiff had only a slight reduction in strength, intact ranges of motion, intact gait, and negative straight leg testing. (*Id.* at 34, 755–56, 757–58, 759.)

Plaintiff does not challenge the ALJ's record-based reasons for her consistency and supportability analyses. Instead, Plaintiff argues that the ALJ erred by failing to acknowledge that Dr. Romero's opinion was consistent with Dr. Ligas' opinion. (Pl.'s Statement of Errors 14–15, ECF No. 8.) But "there is a distinction between what an ALJ must consider and what an ALJ must cite to in a written decision." *Swartz v. Comm'r of Soc. Sec.*, No. 1:10-CV-00605, 2011 WL 4571877, at *7 (S.D. Ohio Aug. 18, 2011). Although the regulations require ALJs to consider every medical opinion on record, they do not require ALJs to "articulate whether the opinion was consistent with each and every piece of evidence in the record." *Simpson v. Comm'r of Soc. Sec.*, No. 1:20-CV-2767, 2021 WL 8342840, at *8 (N.D. Ohio Nov. 30, 2021), *adopted and aff'd.*, 2022 WL 13780899 (N.D. Ohio Oct. 24, 2022). Nor do the regulations "obligat[e]" an ALJ "to determine how" different medical "opinions compare to each other." *Chaney v. Comm'r of Soc. Sec. Admin.*, No. 1:22-cv-1291, 2023 WL 5509429, at *11 n.2 (N.D. Ohio Aug. 25, 2023). *See also Stanley v. Comm'r of Soc. Sec. Admin.*, No. 1:18-cv-1733, 2019 WL 4480183, at *9 (N.D. Ohio Sept. 18, 2019) (explaining that the Sixth Circuit has held that the regulations do not instruct an ALJ to compare the consistency of treating and examining physicians opinions to

12

each other, but instead instruct an ALJ to compare the consistency of a physician's opinion to the record as a whole) (internal quotes omitted). Accordingly, the Court concludes that the ALJ did not reversibly err by failing to explicitly acknowledge that Dr. Romero's opinion was consistent with Dr. Ligas' opinion. *See Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-CV-02313, 2023 WL 5924414, at *7 (S.D. Ohio Sept. 12, 2023) (finding no articulation error where ALJ did not discuss consistency of two opinions when evaluating them.)

In sum, the ALJ properly considered the consistency and supportability factors when evaluating Dr. Romero's medical opinion and provided record-based reasons for determining that it was only partly persuasive. Plaintiff's contention lacks merit.

**B. Memory Loss**

Plaintiff additionally contends that the ALJ committed reversible error when evaluating her memory problems. (Pl.'s Statement of Errors 15–18, ECF No. 8.) Specifically, Plaintiff contends that the ALJ erred by not finding her memory loss to be a severe impairment at step two and by failing to include memory-related limits in her RFC. (*Id.*) The Court agrees in part.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). A severe impairment is defined as

13

"any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months," 20 C.F.R. §§ 404.1509, 416.909.

That said, "the fact that some of a claimant's impairments [are] not deemed to be severe at step two is legally irrelevant where other impairments are found to be severe." *Emard*, 953 F.3d at 852 (cleaned up); *see also Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence"). In that situation, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. §§ 404.1545(a)(2), (e); 20 C.F.R. §§ 416.945(a)(2), (e). *See also Pompa*, 73 F. App'x at 803 (rejecting the plaintiff's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that plaintiff had at least one severe impairment and considered all of the plaintiff's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Here, the ALJ did not find that Plaintiff's memory loss constituted a severe impairment at step two. Instead, the ALJ determined that Plaintiff's severe impairments included a hemorrhagic stroke/cerebrovascular accident with residuals. (R. at 20.) The ALJ clearly considered Plaintiff's memory loss as a symptom or residual of that stroke. Indeed, the ALJ explicitly stated that Plaintiff "reported some memory issues after her stroke . . . ." before discussing evidence related to Plaintiff's memory issues. (*Id*. at 22.)

14

But the ALJ's discussion of that evidence included the following statements about her performance on memory tests during a consultative examination:

> The claimant reported some memory issues after her stroke and was noted to have a neurocognitive disorder, *but the claimant showed intact recall* and could perform cognitive testing without significant deficits (Exhibit 7F). She showed intact recall and intact ability to perform computations as well as serial 7 testing (Exhibit 7F).

(*Id*.) (emphasis added.) That discussion is not entirely accurate. Plaintiff did not demonstrate intact recall during her consultative examination. Rather, the consultative examiner wrote that after a five-minute delay, Plaintiff recalled zero out of three items. (*Id*. at 773.)

The ALJ made the same error when assessing Plaintiff's RFC and considering the limiting effects of her memory loss. There, the ALJ correctly noted that Plaintiff "reported issues related to [her] stroke including memory issues . . . ," sometimes being unable "to remember where she was the day before" and "feeling [that] her short-term memory is poor." (*Id*. at 26.) But the ALJ determined that the record evidence did not support the inclusion of memory limits in Plaintiff's RFC, explaining as follows:

> Despite the claimant's reported memory issues, the claimant testified she was not referred for any specific neurocognitive therapy or intervention by any of her medical providers. The claimant upon her consultative examination, as noted above, showed coherent speech and logical thought processes (Exhibit 7F/4). She was described as being alert, responsive, and without attention problems (Exhibit 7F/4). *The claimant showed unremarkable recall*, performed serial 7 testing appropriately, and her ability to abstract remained appropriate and valid (Exhibit 7F/5). The claimant showed a good general fund of knowledge (Exhibit 7F/5).

(*Id*. at 30) (emphasis added). Again, that explanation is not entirely accurate. Plaintiff's recall during consultative examination was not unremarkable; it was zero out of three after a five-minute delay. (*Id*. at 773.) The ALJ made the same error at least four more times, variously describing Plaintiff's recall during the consultative examination as intact or without significant deficits. (*Id*. at 21, 32, 34, 36.)

To be sure, the ALJ also cited other evidence when determining that Plaintiff's memory problems were not as severe or disabling as alleged. And on remand, the ALJ may conclude that given that other evidence, the inclusion of memory-related limits in Plaintiff's RFC is unwarranted. But here, where the ALJ repeatedly mischaracterized the results of the only short-term memory test in the record, the Court cannot conclude that the ALJ's determination was supported by substantial evidence.

## V.  CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's non-disability determination and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of §405(g) for further consideration consistent with this Opinion and Order.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

16